UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

RICCO SANTANA,

                       Plaintiff,                  9:17-cv-102 (BKS/DEP)

v.

SUPERINTENDENT STEVEN RACETTE;
SUPERVISOR IN CHARGE OF SECURITY JOHN
DOE #1; SUPERVISOR C.O. #2–6; MOVEMENT
AND CONTROL SUPERVISOR C.O. JOHN DOE #7;
C.O. JOHN DOES #8–10; the individual defendant(s)
sued individually and in their official capacities,

                       Defendants.
───────────────────────────────────────────

**APPEARANCES:**

*For Plaintiff:*
Martin E. Adams
Adams & Commissiong LLP
65 Broadway, Suite 715
New York, NY 10006

*For Defendant Steven Racette:*
Eric T. Schneiderman
Attorney General of the State of New York
Ryan W. Hickey
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Ricco Santana, formerly an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional

Facility ("Clinton"), brings this action under 42 U.S.C. § 1983, alleging that DOCCS officers—

including Defendant Clinton Superintendent Steven Racette, as well as ten unidentified corrections officers ("John Does")[1]—violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and New York law[2] in connection with events that occurred between February 28, 2015 and June 4, 2015, when Plaintiff was still incarcerated at Clinton. (Dkt. No. 1, ¶¶ 1, 7–9). Plaintiff sues Defendants in their individual and official capacities, and seeks compensatory and punitive damages. (Dkt. No. 1, ¶ 10; *id.* at 14).

Defendant Racette filed a pre-answer motion for summary judgment on March 24, 2017 (the "Motion"). (Dkt. No. 8). Although the Motion is styled as a motion for summary judgment under Federal Rule of Civil Procedure 56, it is apparent from the papers that Defendant Racette relies on matters outside the Complaint only for some defenses—his exhaustion defense, his statute-of-limitations defense against the claim for infliction of emotional distress ("IED"), and his defense against a claim he perceives as one for injunctive relief[3]—whereas his other defenses are facial challenges to the Complaint itself. (*Compare* Dkt. No. 8-1, at 6–7, 14, 15 (referencing declarations submitted in support of the exhaustion, statute-of-limitations, and injunctive relief defenses), *with id.* at 7–13, 14 (referencing alleged defects in the Complaint as grounds for dismissal based on lack of personal involvement under § 1983, lack of supplemental jurisdiction

---

[1] Because Defendant Racette is the sole Defendant named in the Complaint, the Clerk of Court only issued a summons as to him and directed Plaintiff to "take reasonable steps to ascertain the[] identity" of the John Doe Defendants. *See* Text Notice (Jan. 31, 2017). Accordingly, after the summons on Defendant Racette was served, Assistant Attorney General Ryan W. Hickey entered a notice of appearance on behalf of Defendant Racette only. (*See* Dkt. No. 5).

[2] His state law claims include: (1) negligent supervision, hiring, monitoring, training, and retention of unfit employees; (2) negligence; and (3) intentional and negligent infliction of emotional distress. (Dkt. No. 1, ¶¶ 58–65).

[3] Although the Complaint does not identify any injunctive relief sought, Defendant Racette interposed a defense against that remedy, possibly because of the boilerplate language in the prayer for relief. (Dkt. No. 1, at 14 (requesting "[s]uch other and further relief as this Court may deem just and proper, including injunctive and declaratory relief")).

over state law claims, sovereign immunity, and the Fifth Amendment's inapplicability to state officers)).

In his opposition, filed on May 10, 2017, Plaintiff does not contest that his state law and Fifth Amendment claims should be dismissed, that he is not entitled to injunctive relief, and that due to sovereign immunity he may not seek damages from any Defendants in their official capacities. (*See* Dkt. No. 12, at 3).[4] Plaintiff, however, opposes dismissal of his Eighth and Fourteenth Amendment claims under § 1983 for money damages against Defendants in their individual capacities. As discussed below, exhaustion is not required of a former inmate as a matter of law; therefore, the only other issue remaining before the Court is whether the Complaint sufficiently alleges Defendant Racette's personal involvement under § 1983. (*See* Dkt. No. 8-1, at 7–9 (arguing that the Complaint does not contain factual allegations sufficient to state a plausible basis for Defendant Racette's personal involvement)). The Court will thus consider materials outside the Complaint only to decide Defendant Racette's exhaustion defense, and will otherwise analyze the lack-of-personal-involvement defense under Federal Rule of Civil Procedure 12(b)(6)'s standard of review.

For the reasons set forth below, the Court grants the Motion and dismisses the Complaint as against Defendant Racette without prejudice.

---

[4] Plaintiff's state law claims are barred by section 24 of the New York Correction Law. *See* N.Y. Correct. § 24; *Baker v. Coughlin*, 77 F.3d 12, 15–16 (2d Cir. 1996) (holding that section 24 bars pendent state law claims for damages against DOCCS employees sued in their personal capacity in federal court). Further, sovereign immunity bars Plaintiff's claims for damages against state officers who are sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985); *Faird v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988). Plaintiff has no claim under the Fifth Amendment, which only applies to federal government actors, not state officers. *See Mitchell v. Home*, 377 F. Supp. 2d 361, 372–73 (S.D.N.Y. 2005). Finally, any request for injunctive relief is moot since Plaintiff has been released from prison. *See Muhammad v. N.Y.C. Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997).

## II.     RELEVANT FACTS[5]

Plaintiff was an inmate at Clinton, a DOCCS correctional facility, at the time of the events alleged in the Complaint, (Dkt. No. 1, ¶ 7), but is no longer incarcerated, (Dkt. No. 8-2, ¶ 4; Dkt. No. 12-1, ¶ 1). At the time of the events, Defendant Racette was Clinton's superintendent, and the John Doe Defendants were corrections officers. (Dkt. No. 1, ¶¶ 8, 9).

On February 28, 2015, inmate Johnson attacked Plaintiff, and Plaintiff defended himself. (*Id.* ¶¶ 12, 13). As a result, Plaintiff and inmate Johnson were separately placed on 30-day keeplock. (*Id.* ¶¶ 14, 15). Upon their release from keeplock on March 30, 2015, Defendants placed Plaintiff and inmate Johnson in the same block and company, three cells apart. (*Id.* ¶¶ 16, 17). Later that day, near Plaintiff's cell, inmate Johnson attacked Plaintiff from behind. (*Id.* ¶ 20). Although Plaintiff suffered serious injuries, including a broken jaw, Defendants waited seven days, until April 7, 2015, to take him to Adirondack Hospital for surgery. (*Id.* ¶¶ 21, 22, 23). Plaintiff was placed in Clinton's prison hospital the following day, where "he remained with his jaw wired shut"; he returned to Adirondack Hospital on May 20, 2015 to "get the wires removed from his jaw." (*Id.* ¶¶ 24, 25).

Plaintiff returned to Clinton on May 21, 2015 and was placed in "General Population." (*Id.* ¶¶ 26, 28). That evening, inmate Lathrop attacked Plaintiff as Plaintiff was making a phone call in the North Yard. (*Id.* ¶ 30). As a result, Plaintiff suffered a new fracture to the jaw. (*Id.* ¶ 31). He was placed in protective custody on June 4, 2015. (*Id.* ¶ 33).

---

[5] Except for Plaintiff's status as a former DOCCS inmate—which is an undisputed fact acknowledged by both parties in their statements of material facts, (*see* Dkt. No. 8-2, ¶ 4; Dkt. No. 12-1, ¶ 1)—the relevant facts recited here are taken from allegations in the Complaint that relate to Plaintiff's § 1983 claims, to the extent they have a factual basis and are nonconclusory. Such facts are assumed to be true for purposes of deciding Defendant Racette's lack-of-personal-involvement defense. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). For the sake of clarity, this section also summarizes Plaintiff's characterization of his § 1983 claims based on these facts.

4

Based on these facts, Plaintiff claims that Defendants failed to protect him from other inmates' attacks in violation of the Eighth and Fourteenth Amendments when they placed inmate Johnson and Plaintiff in the same block on March 30, 2015 despite knowing that inmate Johnson was "a known attacker with a known propensity for violence," and when they placed Plaintiff in General Population on May 21, 2015 despite their "duty to place [him] in protective custody." (*Id.* ¶¶ 18–19, 27–28, 34, 53–55). Further, Plaintiff claims that Defendants "ignored [his] need for medical treatment for a serious medical issue and/or injury, or delayed such treatment" in violation of the Fourteenth Amendment. (*Id.* ¶¶ 56–57). Finally, Plaintiff claims that Defendants had a reasonable opportunity to prevent the aforementioned violations of Plaintiff's constitutional rights but failed to intervene. (*Id.* ¶¶ 66–68).

### III.   DISCUSSION

#### A.   Plaintiff's Exhaustion of Administrative Remedies

Defendant Racette argues that Plaintiff failed to exhaust his administrative remedies, and moves under Rule 56 for summary judgment on that defense. (Dkt. No. 8-1, at 4–7). Failure to exhaust is an affirmative defense, on which Defendant Racette has the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). In support of the Motion, Defendant Racette has submitted materials outside of the pleadings, which the Court has reviewed and discusses below.

##### 1.   Standard of Review – Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of

5

material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

### 2. Analysis

The Prison Litigation Reform Act of 1995 requires that prisoners exhaust their administrative remedies before bringing an action under § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). That exhaustion requirement, however, applies only to "a prisoner confined in any jail, prison, or other correctional facility"—i.e., currently incarcerated individuals. *Id.* It is well-settled that former inmates have no obligation to exhaust administrative remedies before suing under § 1983. *See Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) ("[L]itigants . . . who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision.").

Defendant Racette states that there is no record of any grievance or administrative appeal filed by Plaintiff concerning the events described in the Complaint, (Dkt. No. 8-2, ¶¶ 6–10), a fact that is supported by three accompanying declarations, (Dkt. No. 8-3, ¶ 11; Dkt. No. 8-5, ¶ 12; Dkt. No. 8-6, ¶ 13). Citing DOCCS records, Defendant Racette further states that Plaintiff was released to parole supervision on November 5, 2015 and was no longer incarcerated after that date. (Dkt. No. 8-2, ¶ 4; Dkt. No. 8-8). Plaintiff admits that he was released on November 5, 2015, but denies "knowledge or information sufficient to form a belief" about the truth of the grievance records. (Dkt. No. 12-1, ¶¶ 1–2). Crucially, therefore, there is no dispute that Plaintiff

was no longer incarcerated when he filed his Complaint on January 30, 2017. Since exhaustion does not apply to former inmates, Defendant's exhaustion defense fails as a matter of law.[6]

### B. Defendant Racette's Lack of Personal Involvement

Defendant Racette argues that the Complaint should be dismissed for failure to state a claim under § 1983 because it does not sufficiently allege that Defendant Racette was personally involved in the alleged constitutional violations. (Dkt. No. 8-1, at 7–9). This defense is based solely on pleading defects and does not look to matters outside of the Complaint. Accordingly, the Court has confined its review to the Complaint and construed the Motion as raised under Rule 12(b)(6).

#### 1. Standard of Review – Rule 12(b)(6) Motion to Dismiss

To survive a pre-answer motion to dismiss for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners

---

[6] Defendant Racette appears to concede this issue in his reply memorandum of law. (Dkt. No. 13, at 4 n.1).

of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

### 2. Analysis

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Rather, the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

The Second Circuit has held that supervisory personnel may be considered "personally involved" only if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

---

[7] In *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), the Supreme Court explained that "a plaintiff must plead that each Government-official defendant, through the official's individual actions, has violated the Constitution." The Second Circuit has not yet addressed how *Iqbal* affects *Colon*'s standard for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Jamison v. Fischer*, 617 Fed. App'x 25, 28 n.1 (2d Cir. 2015) (affirming the district

The Court has reviewed the Complaint and finds that it is devoid of factual, nonconclusory allegations concerning Defendant Racette's personal involvement in the three constitutional violations claimed by Plaintiff—i.e., failure to protect, denial of medical care, and failure to intervene. While the Complaint alleges that Plaintiff was placed just three cells down from the inmate who had attacked him the month before, (Dkt. No. 1, ¶¶ 16–18), was not taken to a hospital until seven days after the second attack, (*id.* ¶¶ 22–23), and was placed in General Population (instead of protective custody) where he was assaulted by another inmate, (*id.* ¶¶ 28–30), there is no plausible basis for inferring that Defendant Racette: (1) had any direct decisional role in such cell placement, medical care, or General Population placement; (2) learned about the cell placement, medical care, or General Population placement through a report or appeal; (3) was involved in creating or permitting policies or customs of placing violent inmates in close proximity, delaying medical care, or placing at-risk inmate in General Population rather than protective custody; (4) was grossly negligent in managing the officers responsible for the cell placement, medical care, or General Population placement; or (5) had any information concerning Plaintiff's cell placement, medical care, or General Population placement.

The Complaint contains many conclusory allegations concerning Defendant Racette's knowledge of Plaintiff's situation. For example, Plaintiff asserts that Defendant Racette "knew" before February 28, 2015 that "plaintiff was incarcerated under conditions posing a substantial risk of serious harm to him," (*id.* ¶ 35), was "aware that Plaintiff was at a substantial risk of harm," (*id.* ¶ 37), and "was aware that plaintiff was at a substantial risk of serious harm" prior to the March 30, 2015 attack, (*id.* ¶ 38). Yet nowhere does Plaintiff indicate the basis for his belief

---

court's qualified immunity ruling without addressing "whether the district court correctly dismissed the complaint against [the defendant supervisor] for lack of personal involvement"). As discussed below, the bare allegations in the Complaint do not satisfy *Colon*'s standard; therefore, the Court need not address whether *Iqbal* requires an even more stringent standard to establish a supervisor's personal involvement under § 1983.

9

that Defendant Racette knew or was aware of his situation. *See Terranova v. N.Y. State Dep't of Corr.*, 268 F. Supp. 3d 453, 457 (W.D.N.Y. 2017) (dismissing § 1983 claims against a prison superintendent by an inmate who alleged denial of medical care and failure to intervene where the plaintiff alleged "no *facts* suggesting personal involvement" beyond asserting that the defendant was the prison's superintendent). A "conclusory allegation on information and belief . . . [is] insufficient to make [a] claim plausible" where "the complaint's '[*f*]*actual* allegations . . . [do not] raise a right to relief above the speculative level.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (third alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Further, the Complaint's allegations concerning prison conditions and practices at Clinton are not specific to Plaintiff's treatment there. Although Plaintiff asserts that Defendant Racette was "aware (from lawsuits, notices of claim, investigations, and complaints) that many of the DOCCS's officers were insufficiently trained on the proper way to protect detainees," (Dkt. No. 1, ¶ 39), was "aware that such improper conduct and training has often resulted in a deprivation of civil rights," (*id.* ¶ 40), and was "aware prior to the incident that C.O. John Does #8–10 lacked the objectivity temperament, maturity, discretion, and disposition to be employed as officers," (*id.* ¶ 43), he alleges no facts that would allow an inference that Defendant Racette, as a supervisory official, was personally involved in the events at issue. *See Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (holding that conclusory statements concerning a prison superintendent's failure to train and supervise personnel were insufficient to satisfy § 1983's personal involvement requirement); *White v. Fischer*, No. 09-cv-240, 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15464, at *19 (N.D.N.Y. Jan. 25, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and

support a finding of liability."), *report-recommendation adopted*, 2010 WL 624081, 2010 U.S. Dist. LEXIS 15492 (N.D.N.Y. Feb. 18, 2010). Accordingly, Plaintiff's § 1983 claims against Defendant Racette must be dismissed for failure to state a claim.

## IV.  LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint if "further clarification is necessary." (Dkt. No. 12, at 3). A court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and "it is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013). Since the Court cannot say that amendment would be futile, Plaintiff's request for leave to amend the § 1983 claims in the Complaint is granted.

## V.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Motion (Dkt. No. 8) is **GRANTED** to the extent it seeks dismissal of Plaintiff's claims against Defendant Racette; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED without prejudice** as to Defendant Racette; and it is further

**ORDERED** that Plaintiff's request to amend the first, second, and sixth claims in the Complaint, alleging failure to protect, denial of medical care, and failure to intervene, is **GRANTED**, and that any amended complaint shall be filed on or before February 28, 2018.

**IT IS SO ORDERED.**

Dated: January 29, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge