UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RICCO SANTANA,

                                        *Plaintiff*,

        -against-                                    17-CV-00102

STEVEN RACETTE, STEPHEN BROWN, and TAMMY BEZIO,                (BKS)(DEP)

                                        *Defendants*.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

 

LETITIA JAMES
Attorney General of the State of New York
   *Attorney for Defendants*
The Capitol
Albany, New York 12224-0341

Ryan W. Hickey
Assistant Attorney General, of Counsel
Bar Roll No. 519020
Telephone: (518) 776-2616
Fax: (518) 915-7738 (Not for service of papers)
Ryan.Hickey@ag.ny.gov                      Date: October 15, 2019

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 5

    POINT I ........................................................................................................................ 5

        DEFENDANTS WERE NOT PERSONALLY INVOLVED IN THE ALLEGED
        CONSTITUIONAL VIOLATIONS ....................................................................... 5

    POINT II ....................................................................................................................... 9

        PLAINTIFF CANNOT ESTABLISH A DELIBERATE INDIFFERENCE,
        FAILURE TO INTERVENE CLAIM, OR FAILURE TO PROTECT CLAIM .... 9

CONCLUSION ................................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiff Ricco Santana (a/k/a Jason Mobley) (DIN: 08-A-4058), previously an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Constitutional rights during his confinement at Clinton Correctional Facility ("Clinton"). Dkt. No. 17.  He alleges that, after a physical altercation with another inmate over a gang-related dispute, the defendants were deliberately indifferent to his safety, failed to intervene and or/ protect him from alleged constitutional violations, and denied him medical care.  *Id.*

Defendants respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  As detailed below, the plaintiff's claims must be dismissed for lack of personal involvement.  Alternatively, plaintiff's claims must be dismissed because no reasonable jury reviewing the undisputed record in this action could conclude that the defendants, or any other DOCCS employee, acted with deliberate indifference to plaintiff's health or safety, denied plaintiff medical care, or committed any other act which violated plaintiff's Constitutional rights.

Accordingly, defendants request that their motion for summary judgment be granted and that this action be dismissed in its entirety and with prejudice.

## STATEMENT OF FACTS

Plaintiff is a former DOCCS inmate.  From 2008 to 2015, plaintiff was incarcerated in DOCCS following his conviction for Robbery in the Second Degree.  Declaration of Ryan W. Hickey at Exhibit A.  Plaintiff was released to parole on November 5, 2015.  *Id.*

During his incarceration, plaintiff was housed at Clinton, a maximum security correctional facility located in Dannemora, New York. Plaintiff has a history of gang membership, having joined the "Bloods" gang prior to his incarceration. *Id.* at Exhibit B ("Plaintiff's Deposition") at 20:8-20:18.

On February 28, 2015 at approximately 10:25 a.m. plaintiff was involved in a physical altercation with inmate Rauwshan Johnson in Clinton's North Yard. *Id.* at 42:12-42:24 and Def-A.[1] Plaintiff received a misbehavior report for the incident, in which he was charged with violating several inmate disciplinary rules, including fighting (Rule 100.13), violent conduct (Rule 104.11), and creating a disturbance (Rule 104.13). *Id.* at 43:25 -44:5. Plaintiff plead guilty to these violations at a disciplinary hearing. *Id.* at 44:11-44:20, 46:8-47:3.

Plaintiff was sentenced to thirty days of "keeplock" as result of the February 28, 2015 misbehavior report. *Id.* at 44:21-44:4. Plaintiff served his "keeplock" time in Clinton's "D Block." *Id.* at 47:22-48:8. At approximately 10:45 a.m. on February 28, plaintiff was seen by a facility nurse. *Id.* at 139:16-142:2 and Def-F. The nurse prepared an "Inmate Injury Report, in which she noted that plaintiff had two scratches on his forehead and a small abrasion on his right cheek. The nurse noted that plaintiff was "alert, oriented, and ambulatory." *Id.* She cleaned plaintiff's injuries with peroxide. *Id.* Plaintiff stated to the nurse that his altercation with Johnson was about a "problem from the street." *Id.* Plaintiff concedes that the February 28, 2015 incident is an accurate description of the injuries he sustained as a result his altercation with inmate Johnson on that date, and that those injuries were minor in nature. *Id.*

---

[1] References to the exhibits that were marked at Plaintiff's deposition are cited herein as "Def-X."

2

In response to the February 28, 2015 incident, Clinton staff offered plaintiff placement in protective custody. *Id.* at 95:3-97:6 and Def-B. Plaintiff declined this offer. *Id.* Plaintiff signed a memorandum, addressed to Clinton's Deputy Superintendent for Security Stephen Brown, which states "I feel I do not need protection at this time. If I feel I need protection in the near future, I will so inform you." *Id.*

On March 30, 2015, plaintiff was released from "keeplock" and returned to general population. Plaintiff remained in D-Block but was moved from "One Company" to "Two Company." *Id.* at 53:10-54:5. On March 30, plaintiff and Johnson were involved in a second physical altercation. *Id.* During the altercation, plaintiff claims that Johnson punched him in the side of the face while he was walking down a corridor in D-Block. *Id.* Plaintiff was escorted to the facility infirmary and was seen by a facility nurse. *Id.* at Def-G. He remained in Clinton's infirmary for a few days but continued to complain of pain in his jaw. Plaintiff was sent to Adirondack Medical Center, where he was diagnosed with a fracture to his jaw and received surgery. He returned to Clinton after the surgery, and was again admitted to the infirmary.

In response to the March 30, incident, Clinton staff offered plaintiff placement in protective custody. *Id.* at 108:10 -111:3 and Def-C. Plaintiff declined this offer. *Id.* Plaintiff again signed a memorandum, stating that he did not believe he needed protective custody and that, if he ever felt so, he would inform DOCCS staff. *Id.*

On May 21, 2015, after being released back into Clinton's general population, plaintiff was involved in an altercation with inmate Robert Lathrop in Clinton's yard. *Id.* at 73:4-74:24. During the incident, plaintiff claims that inmate Lathrop re-injured plaintiff's jaw. *Id.* Plaintiff had never seen Lathrop before the May 21 incident. *Id.*

In response to the May 21 incident, Clinton staff offered plaintiff placement in protective custody. *Id.* at 114:20 – 116:20 and Def-D. Plaintiff declined this offer. *Id.* Plaintiff again signed a memorandum, stating that he did not believe he needed protective custody and that, if he ever felt so, he would inform DOCCS staff. *Id.*

Plaintiff concedes that he did not believe he was in any danger until after May 21. On June 4, 2015, plaintiff, for the first time, expressed his concern to Clinton staff about gang-related issues with other inmates and indicated that he wished to be placed in protective custody. *Id.* at 131:2-131-21; 162:21-164:4, and Def-E. On this same date, plaintiff was admitted to protective custody, where he remained until being transferred to Great Meadow. *Id.* at 134:23-135:8 In November 2015, plaintiff was released from Great Meadow to parole.

Although they are named as defendants in this action, plaintiff cannot identify any written or verbal interaction with Clinton Superintendent Steven Racette or Correction Officer Tammy Bezio concerning the incidents alleged in the Complaint. *Id.* at 129:17-129. Further, Deputy Superintendent Brown did not participate in the investigation of the incidents alleged in the Complaint, and does not have any recollection of reviewing a protective custody request from the plaintiff. Hickey Dec., Exhibit D ("Brown Deposition") at 52:16-53:11. In fact, when asked at his deposition, plaintiff did not even recognize the names Stephen Brown or Tammy Bezio. *Id.* at 130:10-130:22;135:21-135:23. Finally, Plaintiff never wrote a grievance about the events alleged in the Complaint, or discussed them with his counselor. *Id.* at 127:12-127:14, 128:16-128:18.

# ARGUMENT

## POINT I

### DEFENDANTS WERE NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUIONAL VIOLATIONS

Plaintiff has not established that the defendants were personally involved in any of the alleged Constitutional violations. [2] "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal citation and quotes omitted). Therefore, "supervisor liability in a §1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior* . . . ." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)(internal citation and quotes omitted), *cert. denied* 543 U.S. 1093 (2005). To establish personal involvement, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). A defendant may not be held liable under Section 1983 solely because that person employs or supervises a person who violated the plaintiff's rights. *Id.* ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

"The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the

---

[2] The Court previously granted dismissal without prejudice of the Complaint as against defendant Racette for lack of personal involvement. Dkt. No. 14. The discovery process has uncovered no evidence that Racette, or any of the other named defendants, were personally involved in any alleged Constitutional violation.

defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmate by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Here, the record is devoid of any evidence that defendants were personally involved in any of the alleged Constitutional violations. First, none of the defendants is alleged to have directly participated in the February 28, March 30, or May 21 incidents, or in plaintiff's medical care. Although Racette and Brown were supervisors at Clinton on these dates, it was appropriate for them to delegate the responsibility for inmate movement and medical care to subordinate staff. It is well-established that a DOCCS official may not be held liable under Section 1983 under a theory of *respondeat superior*. *See Hernandez*, 341 F.3d at 144.

Furthermore, although Officer Bezio was a "movement and control officer" at Clinton during the time period alleged in the Complaint, the record contains no indication that he has knowledge of the plaintiff or the incidents alleged in the Complaint. There is no allegation that plaintiff ever interacted with her about the alleged incidents, or even knows her at all. At her deposition, Officer Bezio explained that her role as a "movement and control officer" was limited to identifying open cells within Clinton's computer system when asked to do so by a sergeant. Hickey Dec., Exhibit E ("Bezio Deposition") at 26:15-28:2. However, she had no involvement in the decision whether to

---

[3] The continued viability of the third, fourth, and fifth *Colon* factors is arguably called into question by the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, this issue has not yet been squarely addressed by the Second Circuit. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

move an inmate, the investigation of incidents at Clinton that might precipitate an inmate move, or in inmate medical care. *Id.*

With respect to *Colon*'s second prong, there is no evidence that any of the defendants was aware of a Constitutional violation or failed to remedy that violation. At his deposition plaintiff could not identify any time he spoke or wrote to Racette, Brown, or Bezio concerning the issues raised in the Complaint. Plaintiff's Deposition at 127:22 – 130:22; *see Terranova v. N.Y. State Dep't of Corr.*, 268 F. Supp. 3d 453, 457 (W.D.N.Y. 2017) (dismissing § 1983 claims against a prison superintendent by an inmate who alleged denial of medical care and failure to intervene where the plaintiff alleged "no *facts* suggesting personal involvement" beyond asserting that the defendant was the prison's superintendent); *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 362 (W.D.N.Y. 2013) ("in failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific harm to his safety.").

In fact, plaintiff did not even recognize defendant Brown or defendant Bezio's names when asked about them at his deposition. Plaintiff's Deposition at 130:10 -130:15; 135:21-135:23. Plaintiff did not write a grievance or speak to his counselor about the incidents alleged in the Complaint. *Id.* at 127:12-127:18.

Further, although plaintiff's protective custody refusal memoranda were addressed to defendant Brown, there is no evidence that this form ever placed Brown on notice of any sort of unconstitutional act for which he had a duty to intervene. At deposition, Brown testified that he does not recall ever reviewing a protective custody request or refusal from plaintiff. Brown Deposition at 53:9-53:11. However, even assuming, *arguendo*, that defendant Brown ever personally reviewed these memoranda, there is no basis to conclude that they placed him on notice of a Constitutional

violation. To the contrary, plaintiff indicates in these memoranda that he did not fear for his safety and that he did not wish to be placed in protective custody.

There is nothing in the record to suggest that any of the three defendants had any involvement or knowledge of plaintiff's medical care. It is not disputed that plaintiff was provided treatment by Clinton's medical staff after each incident and was sent to an outside hospital to see a specialist for treatment of his jaw injury. To the extent plaintiff takes issue with the timing of his referral to the outside hospital, he makes no showing that any of the defendants made any decision with respect to his treatment or was otherwise involved in any aspect of his medical care. There is no indication that the defendants were even aware of plaintiff's medical issues until they were named as defendants in this action years later.

Finally, to the extent plaintiff attempts to rely on the "policy or custom" or "grossly negligent supervision" prongs of the *Colon* analysis, his claims similarly fail. There is no evidence that Racette or Brown *created* any policy or custom at all, much less one that allowed a violation of plaintiff's Constitutional rights. The record shows that Clinton staff followed existing DOCCS policy by offering plaintiff opportunity to enter protective custody after his fights, and that plaintiff repeatedly refused it. Indeed, plaintiff assured Clinton staff that he did not believe he was in danger and that, should he change his mind, he would make a request for protective custody. When plaintiff requested protective custody, it was provided to him immediately. Plaintiff cannot plausibly claim that his own refusal of protective custody somehow evidences the existence of a policy or custom that violates his Constitutional rights, or the grossly negligent supervision of the staff who investigated his incidents.

In sum, discovery in this matter has only confirmed this Court's prior holding that there are "no facts that would allow for the inference that Defendant Racette, as a supervisory official, was personally involved in the events at issue." Dkt. No. 14 at p. 10. This finding also extends to plaintiff's claims against Brown and Bezio as there also is no basis to conclude that they were personally involved in any of the alleged Constitutional violations. Accordingly, plaintiff's Section 1983 claims fail as a matter of law and must be dismissed.

## POINT II

### PLAINTIFF CANNOT ESTABLISH A DELIBERATE INDIFFERENCE, FAILURE TO INTERVENE CLAIM, OR FAILURE TO PROTECT CLAIM

Notwithstanding the defendants' lack of personal involvement, the Complaint must be dismissed because plaintiff's claims have no merit. Plaintiff's deliberate indifference, failure to intervene, and failure to protect claims are all analyzed under the Eighth Amendment. The Eighth Amendment includes the duty to protect prisoners from other known harms. *Farmer v. Brennan*, 511 U.S. 825, 829 (1970). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832. Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (citing *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993)).

To make out an Eighth Amendment claim, a "plaintiff must satisfy both an objective . . . and subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). In order to state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions

9

imposing a substantial risk of serious harm," and (2) the prison official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Matthews v. Armitage*, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (citing *Farmer*, 511 U.S. at 834) (internal citations and quotation marks omitted).

Similarly, to make out a claim for failure to intervene, plaintiff must establish: (1) that the defendant had a realistic opportunity to intervene and prevent the harm; (2) that a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008); *see also Henry v. Dinelle*, 2011 U.S. Dist. LEXIS 136583, *12-13 (N.D.N.Y. Nov. 29, 2011).

It is undisputed that, prior to entering protective custody on June 4, 2015, plaintiff had refused all prior offers to be placed in protective custody and, each time he did so, assured DOCCS staff in writing that he did not believe he was in any danger. Plaintiff's Deposition at Exhibits B, C, and D. Plaintiff concedes that these refusals were voluntary. *Id.* at 116:11-116:20. Plaintiff admits that, prior to February 28, 2015, he did not make any complaints to any DOCCS employee that he feared for his safety. *Id.* at 161:11-161:25. Moreover, plaintiff admits that between February 28, 2015, when he initially refused protective custody, and March 30, 2015 when he returned to general population from keeplock, he never raised any concerns with Clinton officials about returning to general population, although he could have done so. *Id.* at 113:5-113:18. It is clear that plaintiff had ample opportunity to apprise Clinton staff of any perceived ongoing threats to his safety, but never did so.

The record shows that the *first time* plaintiff actually raised his concerns about being in general population and requested protective custody was on June 4, 2015 when he returned from the hospital after the May 21, 2015 incident. Plaintiff's Deposition at 120:18-121:7; 131:2-133:25; 162:21-164:6 and Exhibit E. There is no dispute that, once plaintiff actually raised his concerns about remaining in general population and explained to Clinton staff that he was involved in a gang-related conflict, he was immediately sent to protective custody. *Id.* After June 4, 2015, plaintiff remained continuously in protective custody at Clinton until he was transferred to Great Meadow Correctional Facility.

No reasonable jury could find that this record supports a finding that the defendants were deliberately indifferent to plaintiff's health or safety, failed to protect him, or denied him medical care. *See Wood v. Skinner*, 2000 U.S. Dist. LEXIS 12387, at *8 (W.D.N.Y. 2000) (dismissing Eighth Amendment claim on summary judgment because "the fact that plaintiff had previously refused to enter 'protective custody' undermines any inference that defendants have been -- and continue to be --indifferent to plaintiff's health and safety."). Accordingly, the Complaint must be dismissed.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment should be granted and the Complaint should be dismissed in its entirety.

Dated: October 15, 2019
      Albany, New York

           LETITIA JAMES
           Attorney General of the State of New York
              *Attorney for Defendants Steven Racette, Stephen Brown, and Tammy Bezio*
           The Capitol
           Albany, New York 12224-0341

           By: *s/ Ryan W. Hickey*
           Ryan W. Hickey
           Assistant Attorney General, of Counsel
           Bar Roll No. 519020
           Telephone: (518) 776-2616
           Fax: (518) 915-7738 (Not for service of papers)
           Email: ryan.hickey@ag.ny.gov

To:    Martin E. Adams, Esq. (*Via ECF*)
        *Attorney for Plaintiff*
        Adams and Commissiong LLP
        65 Broadway, Suite 715
        New York, NY 10006