UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

RICCO SANTANA,

                                         Plaintiff,

       -against-

STEVEN RACETTE, STEPHEN BROWN, and TAMMY BEZIO

                                         Defendants.

17-CV-00102 (BKS) (DEP)

------------------------------------------------------------------------ X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Adams & Commissiong LLP
65 Broadway Suite 1603
New York, NY 10006
(212) 430-6590
*Attorney for Plaintiff*
Ricco Santana

Dated February 7, 2020

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ..................................................................................................................... 3

    I.    DEFENDANT RACETTE AND BROWN WERE PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATIONS ............................................. 3

    II.    PLAINTIFF CAN ESTABLISH A DELIBERATE INDIFFERENCE CLAIM FOR THE MARCH 30, 2015 ATTACK ...................................................................... 7

    III.    CONCLUSION ................................................................... 8

DECLARATION OF SERVICE ....................................................................................... 10

**TABLE OF AUTHORITIES**

C<span></span>ASES

Alexander v Cuomo, 17CV309(BKS)(CFH), 2018 WL 2041576 (N.D.N.Y. Feb. 26, 2018) .................................................................................................................. 4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ............................................... 3

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ............................................................. 3

Colon v. Coughlin, 58 F.3d 865, 873 ................................................................................... 4

Douglas v. City of New York, 595 F. Supp. 2d 333, 337 (S.D.N.Y. 2009) .......................... 3

Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) .................................................. 1, 2, 7, 8

Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) .......................... 2

Jenkins v. City of New York, 478 F.3d 76, 89-91 (2d Cir. 2007) ........................................ 3

L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) ............................ 3

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) ................. 3

Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) ............................................ 4

Morales v. New York State Dep't of Corr., 842 F.2d 27 (2d Cir. 1988) .............................. 2

Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997) ......................................................... 1

Shaw v. Prindle, 661 F. App'x 16, 18 (2d Cir. 2016) .......................................................... 4

**PRELIMINARY STATEMENT**

At the heart of the matter is plaintiff's allegation that the defendants violated plaintiff's constitutional rights under the Eighth amendment, by being deliberately indifferent in failing to protect plaintiff from attacks by other inmates at Clinton Correctional facility. Plaintiff was attacked by inmate Johnson on February 28, 2015[1]. As a result of this fight, plaintiff and inmate Johnson were sentenced to 30 days keeplock. On March 30, 2015, plaintiff and inmate Johnson were both released from keeplock, and housed in the same housing unit only 2 cells apart. On March 30, 2015, inmate Johnson, attacked plaintiff again and broke his jaw. Subsequently, on May 21, 2015 plaintiff was attacked by inmate Lathrop. While each of the incidents was taking place, defendants Racette and Brown, allowed a culture of complacency to flourish, at Clinton Correctional Facility. This culture was most was most exemplified when, from January 2015 to June 2015, without being detected by security, two inmates were able to dig a hole in the wall of their cells and escape.

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates, including protecting them against violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). The failure to protect an inmate from violence by other inmates constitutes cruel and unusual punishment when

---

[1] Plaintiff is focusing his response on the incidents that occurred on February 28, 2015 and March 30, 2015.

prison officials exhibit "deliberate indifference" to a substantial risk of serious harm to the inmate. Id. at 828; see also Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).

The test for deliberate indifference when a plaintiff's claim is based on a failure to prevent harm, has two parts: (i) a plaintiff must first demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm"; and (ii) a plaintiff must then demonstrate that the "defendant prison officials possessed sufficient culpable intent." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). A prison official has sufficient culpable intent if she has knowledge that an inmate faces a substantial risk of serious harm, and she disregards that risk by failing to take reasonable measures to abate the harm. Id.; see also Farmer v. Brennan, 511 U.S. at 837 (explaining that this state of mind is "more blameworthy than negligence" and is "equivalent to criminal recklessness"); Morales v. New York State Dep't of Corr., 842 F.2d 27 (2d Cir. 1988) (a prison official's negligent failure to protect an inmate from injury by other inmates is not cognizable under Section 1983).

By their motions for summary judgment, defendants seek to avoid trial in this case and evade responsibility for their unconstitutional actions. Plaintiff, Ricco Santana, respectfully submits this Memorandum of Law in opposition on the grounds that material issues of fact exist and that defendants are not entitled to summary judgment as a matter of law.

The plaintiff respectfully refers this Court to his Local Civil Rule 56.1 Statement of Facts submitted herewith for the relevant facts preventing summary judgment in defendants' favor.

2

**STANDARD OF REVIEW**

A district court may not grant summary judgment if a genuine issue of material fact exists. Jenkins v. City of New York, 478 F.3d 76, 89-91 (2d Cir. 2007). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998). The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).("A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law…'). An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Genuine issues of material fact exist with respect to Mr. Santana's claims, and the resulting liability of each defendant.

Defendants' motion for summary judgment overlook the "irreconcilable conflicts between the parties' accounts of what happened", and ask this Court to disregard well settled law prohibiting the Court, on a motion for summary judgment, from resolving factual disputes or making credibility determinations. Douglas v. City of New York, 595 F. Supp. 2d 333, 337 (S.D.N.Y. 2009). Accordingly, defendants' motions for summary judgment must be denied in all respects.

**ARGUMENT**

I. **DEFENDANT RACETTE AND BROWN WERE PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATIONS**

3

"To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring." Shaw v. Prindle, 661 F. App'x 16, 18 (2d Cir. 2016), citing Colon v. Coughlin, 58 F.3d 865, 873. Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir. 1983)).  In recent cases involving post release actions at Clinton correctional facility, courts in the NDNY have found that plaintiffs have sufficiently pleaded personal liability, where defendant Racette was the policy maker and supervisor of Clinton at the time of the escape. See Alexander v Cuomo, 17CV309(BKS)(CFH), 2018 WL 2041576 (N.D.N.Y. Feb. 26, 2018) . The Court held that, "[g]iven the unusual circumstances following this escape and the widespread allegations of beatings and similar conduct, the [c]omplaint plausibly alleges that [Supt.] Racette had reason to know of the violations and was grossly negligent or deliberately indifferent in failing to prevent them." Id. at *6 (citing Meriwether, 879 F.2d at 1048).         In the present case as it pertains to defendants Racette and Brown, the plaintiff asserts that defendants Racette and Brown are liable to plaintiff , under the third and forth Colon factors. Defendant Racette was the policy maker and supervisor of

4

Clinton correctional facility from February 28, to May 21, 2015. During that time and prior to, two inmates were able to dig a hole undetected by corrections officers. It is clear that security at Clinton Correctional Facility was in a state of disarray. The policy and custom was to allow for a chronic indifference toward security. A subsequent report by the New York State Inspector General states that "The Inspector General is incredulous that high-ranking security staff, including executive management officials were unaware of these deficient practices."

Prior to the February 28, 2015 attack on plaintiff, Defendants Superintendent Racette and Deputy Superintendent Brown allowed a "culture of carelessness" and "a chronic indifference toward security" at Clinton Correctional Facility. In the present case, defendant Racette had reason to know of the deficient practices at Clinton Correctional Facility that created the environment for plaintiff to be assaulted. It is important to know that a custom or policy need not be in writing or formally established by a supervisor. A custom or policy may be established when a supervisor allows unconstitutional activities to continue.

It is also clear that defendants Racette and Brown are also liable under the fourth Colon factor. During the time plaintiff was attacked by inmates Johnson and inmate Lathrop, there were significant lapses in training. The Inspector General's report mentions deficiencies in training of Security Staff, stating "Although newly promoted sergeants, lieutenants, and captains are required to complete either one or two weeks of academy training, records reveal many promoted officers do not do so until well after assuming their new duties. As of August 18, 2015, a total of 182 sergeants statewide had not completed training, including 83 sergeants whose promotions occurred between 1995 and 2012. As of October 15, 2015, six sergeants at Clinton, all promoted between 2012

5

and 2015, had not received the training. According to the DOCCS training director, sergeants avoid the training by having a supervisor notify the academy that they are unavailable, and the academy lacks authority to compel attendance. Records show that only eight of 22 captains attended the most recent training. In the present case it is clear that there were failures in training and supervision at Clinton Correctional Facility.

The title of superintendent of New York State correctional facilities is created by statute. N.Y. Correct. Law § 18(2) provides that superintendents "…shall have the supervision and management" of the correctional facility to which he is appointed. The law further provides that "the superintendent of a correctional facility shall direct the work and define the duties of all officers and subordinates of the facility." N.Y. Correct. Law § 18(3). The superintendent is appointed by the Commissioner. N.Y. Correct. Law § 18(1). Clearly, Clinton Correctional Facility, was the responsibility of Superintendent Racette at the time of the escape and its aftermath. Superintendent Racette was statutorily required to supervise and manage the facility and direct the work of officers and subordinates. In the present case it is clear that defendant Racette failed in all aspects.

Defendants' contend that because plaintiff was offered protective custody the defendants could not have been deliberately indifferent. Plaintiff was assaulted by inmate Johnson on February 28, 2015, and both inmates were placed in keeplock for 30 days. Both plaintiff and inmate Johnson were released from keeplock, and placed in the same housing unit 3 cells apart. Plaintiff had no reason to expect that he would need protective custody, because he would have never thought the prison officials would be so grossly negligent and careless to place plaintiff in the same housing area with the same inmate who attacked him.

6

Plaintiff never suspected that he would be housed in the same housing area as his attacker so he did not have an opportunity to request protective custody prior to the March 30, 2015 attack. However defendants had full control over where they housed plaintiff and his attacker after they were both released from keeplock.

Defendants argument in sum and substance is that because plaintiff was offered protective custody, and he refused, they could not be responsible for him being attacked. The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates, including protecting them against violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). Defendants' in placing plaintiff and inmate Johnson in the same housing area merely 3 cells apart immediately after being released from keeplock was not reasonable. In fact, defendants took no measures to protect plaintiff from being attacked a second time.

In the present case, defendants stated that they could not be liable because plaintiff did not request protective custody, essentially make plaintiff responsible for his own safety. Plaintiff is in prison and has no control over any aspect of his life.

## II.    PLAINTIFF CAN ESTABLISH A DELIBERATE INDIFFERENCE CLAIM FOR THE MARCH 30, 2015 ATTACK

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates, including protecting them against violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). The failure to protect an inmate from violence by other inmates constitutes cruel and unusual punishment when prison officials exhibit "deliberate indifference" to a substantial risk of serious harm to the inmate. Id. at 828; see also Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). However, it is not "every injury suffered by one prisoner at the hands of another that

7

translates into constitutional liability for prison officials." Farmer v. Brennan, 511 U.S. at 833.  Prison officials can be held liable only if they subjectively knew of and disregarded an excessive risk to inmate health or safety.  Id. at 837.  In the present case, inmate Johnson attacked plaintiff on February 28, 2015, and then the same inmate attacked plaintiff on March 30, 2015, when they were both released from keeplock and placed in the same housing unit.  The very fact that plaintiff was housed in the same housing with his assailant after being released from keeplock, is indicative of deliberate indifference by defendants.  When deciding where to house plaintiff they did not consider the harm in housing him with an inmate that had previously attacked him.  Plaintiff has established a triable issue of fact that he was incarcerated under conditions posing a substantial risk of harm.  He was attacked by inmate Johnson on February 28, 2015, and then on the very day that plaintiff and his attacker were released from keeplock after the first attack, both inmates were housed in the same housing area, and plaintiff was attacked.  As a result, plaintiff has established a triable issue of fact that he was not only "incarcerated under conditions posing a substantial risk of harm,", but also the requisite deliberate indifference defendants to the risk of that harm.  Id. at 842 ("the official acted or failed to act despite his knowledge of a substantial risk of harm").

### III.     CONCLUSION

In sum, on February 28, 2015 plaintiff was attacked by inmate Johnson.  On March 30, 2015, inmate Johnson again attacked plaintiff, after the placed in the same housing area.  It is clear that there is an issue of material fact whether plaintiff was incarcerated under conditions posing a substantial risk of harm, and that defendants Racette and Brown created a policy or custom under which unconstitutional practices

occurred, or allowed the continuance of such a policy or custom, and that the defendant was grossly negligent in supervising subordinates who committed the wrongful acts. For all the foregoing reasons, plaintiff respectfully requests that the Court deny the defendants' motions for summary judgment.

Dated:	February 7, 2020
	New York, New York

Respectfully submitted,

*/s/ Martin E. Adams*
_____
Adams & Commissiong LLP
65 Broadway Suite 1603
New York, NY 10006
(212) 430-6590
Attorney for Plaintiff
Ricco Santana

## DECLARATION OF SERVICE

Martin E. Adams, Esq. declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

On February 7, 2020, I served the annexed Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment, Declarations in Support and Exhibits, and Plaintiff's Rule 56.1 Statement on:

>Ryan W. Hickey
>Assistant Attorney General, of Counsel
>The Capitol
>Albany, New York 12224-0341
>Ryan.Hickey@ag.ny.gov

[X]   BY ELECTRONIC CASE FILING
[X]   BY ELECTRONIC MAIL
[ ]   BY HAND
[ ]   BY FIRST CLASS MAIL
[ ]   BY FACSIMILE WITH PERMISSION


Dated:   New York, New York
         February 7, 2020

*/s/ Martin E. Adams*
_____
Adams & Commissiong LLP
65 Broadway Suite 1603
New York, NY 10006
(212) 430-6590
Attorney for Plaintiff
Ricco Santana

10